# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **FELICIA PICKENS,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **7:13-cv-2282-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
|     **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Felicia Pickens ("Pickens") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Pickens filed her application for Title XVI Supplemental Security Income on September 27, 2010, alleging an amended disability onset date of September 27,

2010 due to shortness of breath, bronchitis, depression, and cysts. (R. 80, 192, 197). After the SSA denied her application, Pickens requested a hearing before an ALJ. (R. 118-19). The ALJ subsequently denied Pickens's claim, (R. 60-72), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-4). Pickens then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 205(g), on September 26, 2013. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Pickens had not engaged in substantial gainful activity since September 27, 2010, and therefore met Step One. (R. 65). Next, the ALJ found that Pickens satisfied Step Two because she suffered from the severe impairments of "left kidney atrophy, abdominal pain, major depressive disorder, fatty infiltration of the liver, slight curvature of the spine, chronic sinusitis, and history of alcohol intoxication." (R. 66). The ALJ then proceeded to the next step and found that Pickens did not satisfy Step Three since she "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Pickens has the residual functional capacity (RFC) to

stand/walk six hours in an eight-hour day; sit six hours in an eight-hour day; lift/carry 20 pounds occasionally and 10 pounds frequently; and occasionally bend. She must avoid concentrated exposure to dust, fumes, odors, gases and poor ventilation. She can understand, remember, and carry out simple instructions and maintain concentration and attention for at least two-hour periods in order to complete an eight-hour workday. She can tolerate normal work pressures but should avoid quick decision-making, rapid changes, multiple demands, and excessive workloads. She can maintain occasional interaction with the general-public and co-workers and can adapt to changes in the workplace are introduced gradually and infrequently

(R. 67). In light of Pickens's RFC, the ALJ determined that Pickens "is unable to perform any past relevant work." (R. 71). Lastly, in Step Five, the ALJ considered Pickens's age, education,[2] work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Pickens] can perform." (R. 71). Therefore, the ALJ found that Pickens "has not been under a disability, as defined in the Social Security act, since September 27, 2010, the date the application was filed." (R. 72).

## V. Analysis

Pickens takes issue with the ALJ's decision and moves to remand, contending that the ALJ failed to develop a full and fair record, erred in assessing Pickens's RFC, failed to offer to the vocational expert a hypothetical that accounted for all of Pickens's impairments, and failed to properly evaluate

---

[2] As of the date of the ALJ's decision, Pickens was 26 years old, with a limited education, and able to communicate in English. (R. 71).

Pickens's subjective symptoms. Doc. 11 at 2-10. The court rejects these contentions and addresses each one below.

   *1. Development of the medical record*

Turning to Pickens's first contention, the court finds that the ALJ properly developed the record. Pickens is correct in noting that the ALJ has a basic obligation to develop a full and fair record, including, when necessary, to order a consultative examination. Indeed, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [her] to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). *See also* 20 C.F.R. § 416.919(a) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim."). However, in order to establish that the ALJ failed to properly develop the record, Pickens must demonstrate "evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In that regard, while Pickens claims that the ALJ did not obtain a consultative examination prior to rendering a decision, and that the failure to obtain an examination resulted in prejudice, doc. 11 at 4, Pickens does not point to any precise evidentiary gaps that a consultative

examination would have filled.[3] In fact, Pickens offers no support for the proposition that a consultative exam was necessary for the ALJ to make an informed decision on Pickens's claim for supplemental security income. Rather, Pickens merely points to the disability specialist's report, which states "there were large gaps in treatment" between December 2006 and December 2008, and that "the lack of thorough exams [during that time period] cause an inability to establish severity with certainty" with respect to Pickens's Title II claim for disability insurance benefits.[4] (R. 453). Unfortunately, this observation by the disability specialist is not relevant to the sufficiency of the record with respect to Pickens's Title XVI claim for supplemental security income, for which the amended disability onset date is September 27, 2010. (R. 80). For this relevant claim, Pickens presents no evidence of an ambiguity, inconsistency, or insufficiency in the record as of September 27, 2009—the date from which the ALJ was required to begin developing the record pursuant to 20 C.F.R. § 416.912(d)[5]—to establish that a consultative exam was necessary for the ALJ to

---

[3] The court notes that the record includes a mental consultative examination which took place on November 12, 2010. (R. 449-452). Pickens is presumably suggesting that the ALJ should have obtained an additional consultative examination (perhaps of Pickens's physical conditions) to supplement the mental consultative examination.

[4] Pickens withdrew her Title II claim when she amended her disability onset date to September 27, 2010. (R. 80)

[5] *See* 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.").

make an informed decision. The failure to do so dooms Pickens's contention of error. *See Holladay*, 848 F.2d at 1209; 20 C.F.R. § 416.919(a).

Ultimately, the court finds that the record contains sufficient evidence for the ALJ to evaluate Pickens's impairments and functional ability, and lacks the sort of evidentiary gaps necessary to demonstrate prejudice. More specifically, the record contains Pickens's clinical notes over a ten-year period, a consultative examination of Pickens's mental health, a review by a psychiatric expert, and a physical examination by Pickens's treating physician. (R. 401-412, 449-452, 456-473, 496-506). Furthermore, during the hearing, the ALJ questioned Pickens regarding all aspects of her medical conditions and treatment, symptoms and frequency, and the medications she takes to control them. (R. 83-89). The ALJ also asked Pickens how long she could sit and stand, how far she could walk, how much she could lift, whether she could complete various chores, and about her daily activities and living arrangements. *Id*. Throughout the hearing, Pickens was responsive to all of the ALJ's questions and was able to describe her medical conditions and symptoms. (R. 80-93). Based on all of this record evidence, the ALJ was able to determine that Pickens suffered from numerous severe impairments. (R. 66). Accordingly, the court concludes that the ALJ properly developed a full and fair record. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (finding no evidentiary gaps where the ALJ thoroughly questioned the claimant

during the hearing and where the claimant "failed to point to anything in the record which suggests that additional medical evidence specific to her situation might be gathered"); *Brown*, 44 F.3d at 935 (ALJ did not properly develop the record where there was no indication that he contacted physician for up-to-date medical records and where the claimant had "great difficulty" explaining how her ailments prevented her from working).

### 2. *The RFC determination and hypothetical to the vocational expert*

In three related contentions, Pickens argues that the ALJ's RFC determination is not based on substantial evidence because the ALJ failed to (1) "conduct a full and fair hearing," (2) "link the limitations she assessed to any tangible record evidence," and (3) address Pickens's need for frequent bathroom breaks "in the RFC or in any of the hypothetical questions posed to the vocational expert." Doc. 11 at 6-7. The court rejects the first argument because, for the reasons stated above, the ALJ properly developed the record, and there is otherwise no evidence that the hearing was not "full and fair."

The court also rejects Pickens's second argument because, while Pickens is correct that the ALJ must provide "a sufficient rational link [to] substantial record evidence" to support her RFC determination, *Napier v. Colvin*, No. CIV.A. 13-00355-N, 2014 WL 1017897, at *3 (S.D. Ala. Mar. 17, 2014), the court finds that substantial record evidence supports the ALJ's RFC determination in this case. For

example, to support her finding that Pickens has the physical capacity "to stand/walk six hours in an eight-hour day[, and] sit six hours in an eight-hour day[,]" the ALJ's opinion points to Pickens's testimony that she has no problem walking but cannot stand "very long, " and "cramps up every other hour" when sitting. (R. 69, 88-89). Furthermore, to support the ALJ's finding that Pickens could "lift/carry 20 pounds occasionally and 10 pounds frequently," the record contains testimony from Pickens that she can lift two gallons of milk, (R. 88-89), and Pickens's work history reveals that she held jobs where she lifted items weighing up to 50 pounds, (R. 208-211). Based on this evidence, the court finds that the record supports the ALJ's conclusion that Pickens is physically capable of "performing work at the light level of exertion." (R. 70). Moreover, regarding Pickens's mental capacity, the ALJ points to a mental RFC assessment by a psychiatric expert which supports her finding that Pickens can "understand, remember, and carry out simple instructions and maintain concentration and attention for at least two-hour periods in order to complete an eight-hour workday," "tolerate normal work pressures [while avoiding] quick decision-making, rapid changes, multiple demands, and excessive workloads," and "maintain occasional interaction with the general-public and co-workers and . . . adapt to changes in the workplace that are introduced gradually and infrequently."

(R. 68-69, 470-473). Accordingly, the court concludes that the ALJ properly linked the RFC determination to substantial record evidence.

To support her third contention relating to frequent bathroom breaks, Pickens points out that one of her medical conditions, left kidney atrophy, "can cause frequent need for urination, blood in the urine and pain when urinating," and claims that the ALJ "never once considers that [Pickens's] frequent bathroom breaks are related to her kidney atrophy, and does not include any limitations in the RFC or in any of the hypothetical questions posed to the vocational expert[.]" Doc. 11 at 7. However, to the extent that Pickens is arguing that the ALJ should have accounted for Pickens's frequent bathroom breaks as a separate "limitation," the court notes that the ALJ directly acknowledged Pickens's testimony that she "has to use the [bathroom] on at least an hourly basis," but accurately noted that Pickens's "clinical notes are devoid of reference to [Pickens] experiencing a need for frequent bathroom breaks." (R. 69, 70). Unfortunately, even accepting that kidney atrophy can cause frequent urination, the record contains no medical evidence to establish that Pickens suffered from this particular symptom. *See Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (an acceptable medical source is required to establish the existence of an impairment). Furthermore, even if Pickens had established such a limitation, to the extent that Pickens is arguing that her frequent bathroom breaks justify a different RFC

determination, Pickens failed to explain why frequent bathroom breaks preclude her from performing work at a light level of exertion. In fact, while Pickens is correct that the ALJ did not explicitly include the frequent bathroom use in the hypotheticals to the vocational expert, (R. 95-100), the vocational expert ultimately testified in response to a question from Pickens's counsel that frequent bathroom use would generally not be a problem in certain unskilled occupations unless Pickens takes a long period of time to use the bathroom, (R. 100); and, unfortunately, nothing in the record indicates that Pickens takes a long period of time to use the bathroom. For these reasons, the court rejects Pickens's contention that the ALJ erred in assessing Pickens's RFC.

    *3. Pickens's subjective symptoms*

Lastly, Pickens contends that "*the record* was silent on whether or not there was objective evidence to substantiate [Pickens's] subjective complaints." Doc. 11 at 9 (emphasis added). The court assumes that Pickens meant to state that the ALJ was silent on this issue because otherwise, there would be no dispute regarding Pickens's subjective pain testimony. In other words, Pickens seems to suggest that the ALJ improperly applied the second-prong of the *Hand* standard, and that objective medical evidence confirms the severity of her pain, particularly "severe pain" commonly associated with kidney atrophy, and "severe, painful cramps" commonly associated with endometriosis, dysmenorrhea, and other gynecological

complications from which Pickens suffers. *Id.* The court disagrees and notes that Pickens only testified to having minor "stomach" pain, and the ALJ was not "silent" regarding the objective record evidence as it relates to Pickens's pain. (R. 68-69, 86). Rather, the ALJ's opinion thoroughly summarizes the record evidence available and compares that evidence against Pickens's testimony regarding her subjective symptoms, including that she suffers from minor "stomach" pain. (R. 68-69). Ultimately, the ALJ concluded, "after careful consideration of the evidence, . . . that the evidence does not satisfy . . . Eleventh Circuit law on the assessment of subjective complaints of pain and other symptoms." (R. 69). Therefore, the court concludes that the ALJ properly considered the objective medical evidence as it relates to Pickens's pain testimony. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.") (citation and internal quotation marks omitted).

Furthermore, to the extent that Pickens is arguing that her kidney atrophy and gynecological conditions cause her to experience "severe pain" which the ALJ purportedly failed to address, Pickens's failure to testify that she experienced severe pain would belie any such contention. In fact, Pickens characterized her

pain as "minor pain" which "[is not] as crucial" as it was prior to her undergoing a partial hysterectomy in October 2010, one month after her onset disability date. (R. 86). Additionally, while Pickens points out that "she was diagnosed with dysmenorrhea[,] . . . which is often associated with 'severe, painful cramps,'" doc. 9 at 11, Pickens's clinical notes state that "[t]he severity of symptoms [associated with dysmenorrhea] varies . . . from woman to woman," (R. 379), and no record evidence confirms the severity of Pickens's pain. In any event, Pickens's gynecological diagnoses were prior to both her onset disability date and her partial hysterectomy, which she stated alleviated much of her pain. (R. 86, 375, 379). Significantly, Pickens testified that she is not using any medications for her pain and that she is generally able to complete most of her daily activities and household chores. (R. 83-84). Accordingly, without re-weighing the evidence, the court concludes that substantial evidence supports the ALJ's conclusion that Pickens's subjective symptoms do not establish a disability. *See Dyer*, 395 F.3d at 1211 (rejecting subjective pain testimony where claimant used medication commonly prescribed for "mild to moderate" pain, responded well to treatment, and could complete household chores).

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Claimant is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

    **DONE** the 24th day of November, 2014.

_____<br>
ABDUL K. KALLON<br>
UNITED STATES DISTRICT<br>
JUDGE